## NEW YORK SUPERIOR COURT.

MORITZ VON BRUCK and others, appellants agt. FREDERICK M. PEYSER, respondent.

In an action against the defendant for *false and fraudulent representations* made to the plaintiffs of the solvency of a third person, by which the plaintiffs, as alleged, were induced to sell their goods to such person on credit, by reason of which they suffered loss, the defendant's liability depends upon the falsity of his statements and his knowledge thereof, and their effect upon the business dealings of the plaintiffs with the debtor. These are all questions of fact proper for the consideration of a *jury*.

Although it may be that the law will not presume and will not allow a party to claim that representations which are believed and acted on to-day, have a continuing influence for all time, and that there probably must be some *limit;* yet it is difficult, if not impossible, to say where the period should be placed. Like all questions of a similar nature, the extent of *time to which it is fair to presume* or to permit a party to claim that the influences continued their effect, must depend upon the facts and circumstances of each case, and it is for a *jury,* and not for the court, to ascertain from the evidence and determine such fact.

Therefore, the question in this case whether the plaintiffs were influenced in the sales made by them to their debtor in 1860, by representations made to them by the defendant in respect to his solvency in 1858, was one which should have gone to the jury.

*December General Term,* 1864.

*Before* ROBERTSON, *Ch. J.,* MONELL *and* GARVIN, *JJ.*

THE action was to recover damages as well for a false and fraudulent representation made to the plaintiffs by the defendant, as for the fraudulent concealment from the plaintiffs of facts within the defendant's knowledge. On the

trial, before a justice of this court and a jury, it was proved that on the first of February, 1858, the defendant wrote and transmitted to the plaintiffs a letter, of which the following is a copy :

"New York, February 1, 1858.

"Messrs. H. Von Bruck's Sons : I hereby respectfully advise you that I have this day made over my business, with debits and credits, to my brother-in-law and assistant for many years, Mr. Emil Kanter, who will continue the same with undiminished means, under the firm of 'Emil Kanter, successor to Frederick M. Peyser.' In giving you my best thanks for the confidence reposed in me hitherto, I beg that you will extend the same also to my successor, and I am, Respectfully and humbly,

"F. M. Peyser."

One of the plaintiffs testified that after the receipt of this letter the defendant came to Crefeldt, in Prussia, the plaintiff's residence, on the 3d of June, 1858, and repeated the statement contained in the letter, and told the plaintiff that he himself being a man of property, and purposing to live in Europe thenceforth, had given up his business to his brother-in-law Kanter ; that in fact the concern would remain altogether the same with an alteration of the firm ; that these representations had the greatest influence on their business dealings with Kanter, to whom, being totally unknown to them, they should also never have allowed a single cent of credit. He further testified that they (the plaintiffs) perfectly relied upon the integrity of the defendant's statements, and felt safe in consequence. Upon his cross-examination, the same witness testified that at the interview with the defendant on June 3d, 1858, they wanted him to interpret the meaning of the expression in his letter, " undiminished means " (literally unweakened means) ; in answer to which the defendant told them that he himself being a man of property, and purposing to live in Europe henceforth, had given up his business to his brother-in-law ;

that in fact the concern would remain altogether the same with an alteration of the firm. It was admitted in the answer, that for a long time prior to February, 1858, the defendant had been engaged in a lucrative business in New York, and had realized a fortune; and had heretofore been accustomed to purchase goods of the plaintiffs on credit, and had always paid for the same.

The answer further admitted that at the time of the purchase Kanter had no property or means, except that the defendant at that time gave him a large amount of stock and fixtures, good will and lease of store, of the value of $18,000 or $20,000, which then became the property and means of Kanter. It was further admitted, that except as aforesaid, Kanter purchased the business upon credit, and that the defendant knew the facts above set forth as to property, means and credit. The defendant further admitted that for the purchase Kanter was indebted to him in the sum of $7,000, and that he loaned him in addition $2,000 more to carry on the business, and that at the time of the purchase Kanter gave him a chattel mortgage upon the goods which he had on hand.

The first purchase made by Kanter of the plaintiffs was July 10, 1858, and the last October 3, 1860. All the purchases made in 1858 and 1859 were paid. In 1860 the purchases amounted to 11,982 francs, which were not paid for. It was proved that the goods sent to Mr. Kanter were personally selected for him by the defendant from the plaintiffs' stock in their warehouse, or were ordered by the defendant to be manufactured for and sent to Mr. Kanter on credit. The plaintiffs gave in evidence two other letters, as follows: · ·

   " To H. Von Bruck's Sons :

      " KRAMFTH, near Hamburgh, June 29, 1860.

   " I beg you after receiving this letter, to send me samples of velvet trimmings of all sorts of breadths, as I am

inclined to give you an order for it, if the samples and prices are suitable. Yours, &c.,

" FRED. M. PEYSER."

" Messrs. H. Von Bruck's Sons :

" KRAMFTH, near Hamburgh, 16th July, 1860.

"I hereby take the liberty to give you for Mr. Emil Kanter, the following orders, and you will see to have good fabrics and fine selection of colors. I also beg you to let the goods be cut per 11 metre. As regards the conditions, you will receive payment from Emil Kanter in six months from the date of the invoice, by three months' drafts on Hamburgh punctually. I hope you will be satisfied by it, as Mr. Kanter has received the same conditions from all his other European friends. Yours, &c.,

" FRED. M. PEYSER."

At the close of the plaintiffs' evidence, upon the defendant's motion, the justice dismissed the complaint, and the plaintiffs excepted.

Judgment was thereupon entered, and the plaintiffs appealed.

C. WEHLE and T. DARLINGTON, *for appellants.*

W. H. PECKHAM, *for respondent.*

By the court, MONELL, J. The representation contained in the defendant's letter of the first of February, 1858, that Kanter, to whom he had sold and transferred his business, would continue it with "undiminished means," was a representation capable of being interpreted into meaning that the pecuniary means and facilities possessed by Kanter were equal to those possessed by the defendant, and that such means and facilities would be employed by Kanter in conducting his business as the defendant's successor. The defendant for many years had been engaged in the business to which Kanter succeeded, and from which he had acquired large wealth. His dealings with the plaintiffs had extended

through a number of previous years, and they knew him to be a man of "means," and worthy of credit, and they believed not only from their own construction of the letter, with their previous knowledge of the defendant's circumstances, but from his subsequent interpretation of the significance of the words "undiminished means," that Kanter was equally worthy of credit.    In the sales made to Kanter, the plaintiffs relied upon the integrity of the defendant's statements, and as one of the plaintiffs testifies, his representations had the greatest influence upon their business dealings with Kanter, to whom, being totally unknown, they should else never have given any credit.

There was sufficient evidence that the representations were made, and that they were relied upon by the plaintiffs in their subsequent dealings with Kanter.    It hence became a question for the jury to determine whether the representations were capable of the interpretation placed upon them by the plaintiffs.    The action was in *tort* for a false and fraudulent representation, which induced the plaintiffs to sell their goods to Kanter on credit.    The defendant's liability depended upon the falsity of the defendant's statements and his knowledge thereof, and their effect upon the business dealings of the plaintiffs with Kanter. These were all questions of fact, proper for the consideration of a jury, and unless the length of time intervening between the receipt of the defendant's letter of February, 1858, and the sales in the summer of 1860, in judgment of law, operated to prevent any supposed influence which at an earlier period did operate upon the minds and govern the actions of the plaintiffs, then I think it was error to take those questions from the jury.

It may be that the law will not presume and will not allow a party to claim that representations, which are believed and acted on to-day, have a continuing influence for all time.    There probably must be some limit, but it is difficult, if not impossible, to say where the period should

be placed. Like all questions of a similar nature, the extent of time to which it is fair to presume, or to permit a party to claim, that the influences continued their effect, must depend upon the facts and circumstances of each case, and, therefore, no general rule can be adopted. In all such cases it is for the jury and not the court to determine whether the parties continued to be operated upon by the representations previously made, and it would be proper to instruct the jury that they are to ascertain from the evidence and determine such fact.

The only case that I have been able to find in which this precise question has been discussed, is *Zabriskie* agt. *Smith* (13 *N. Y. R.* 322). There the representation relied on was made some months before the last sale, and the court says it is a question for the jury whether the sale was influenced by representations made some months previously. In short, that it was not a question of law, but of fact. I am, therefore, of opinion that the question whether the plaintiffs were influenced in the sales made in the summer of 1860, by representations made in 1858, should have gone to the jury.

There is another view of this case presented by the pleadings and proofs, which I will briefly notice. The action in part is founded on a fraudulent suppression of facts by the defendant, and there was some evidence to support that branch of the case. Kanter had no means, had purchased the business wholly on credit, and was largely indebted to the defendant therefor. These facts were known to and were suppressed by the defendant. In all the purchases made of the plaintiffs he acted as the agent and friend of Kanter. He had frequent personal interviews and written correspondence with the plaintiffs on Kanter's behalf. As late as June 29, and July 16, 1860, he gave written orders for goods to be sent to Kanter, in which he gave assurances that the bills would be punctually paid. At no time did he disclose to the plaintiffs the facts

of the transfer of his business to Kanter, and Kanter's large indebtedness to him, for which he held a chattel mortgage upon all of Kanter's stock in trade, given, as it is fair to infer from the evidence, at or shortly after the sale. By the dismissal of the complaint, this branch of the case was also taken from the jury. It is quite clear, I think, that if the defendant knowing the facts attending the sale to Kanter, and his circumstances, did by his representations or acts, induce the plaintiffs to give Kanter credit, suppressing such facts, he would be liable in this action. Upon the whole I am of opinion that both the questions should have gone to the jury, and that it was error to dismiss the complaint.

Judgment should be reversed and a new trial ordered, with costs to abide the event.

Robertson, C. J.    The cause of action in this case consists of a deceit practiced by the defendant on the plaintiffs in the year 1858, by means of two knowingly false representations made by the former to the latter of the means and resources of one Emil Kanter, on the faith of which the latter sold to him merchandise, amounting in value to nearly $2,800, on four occasions between the end of July and the beginning of October, 1860. The fraudulent concealment by the defendant of Kanter's embarrassments and indebtedness at the time of such representations set out in the complaint, not being alleged to have been made for any purpose of deceit, or to have had any connection with the sale, may be disregarded as being any part of the cause of action.

The first of such representations was by letter written in German, received by the plaintiffs in March, 1858. It announced a transfer by the defendant of " his business, with debits and credits," to Kanter, who was his brother-in-law, and had previously been his assistant for many years, who would " continue the same with (what is translated) undiminished means," under the firm of Emil Kanter,

Von Bruck agt. Peyser.

successor to the defendant.   The latter requests the plain-
tiffs to " extend the same confidence to his successor" they
had hitherto reposed in him.   In the beginning of June
following, 'one of the plaintiffs, in an interview with the
defendant, " wanted him to interpret the meaning of the
expression of (such) his letter " undiminished (or unweak-
ened) means ; in answer to which " he said " that he him-
self being a man of· property, and purposing to live in
Europe thenceforth,.had given up his business to his bro-
ther-in-law; that in fact the concern would remain alto-
gether the same, with an alteration in the firm.

At the time of making such representations, Kanter was
indebted to the defendant for the whole purchase money
of the greater part of his stock of goods bought on credit,
and two thousand dollars for a loan of money, having no
other means but such goods and borrowed money.   In
July, 1858, the plaintiffs sold Kanter considerable merchan-
dise at six months credit, and also on six other occasions
between that and June, 1859, all of which were paid for
by the middle of March, 1860.   In the year 1860, they
again sold him in like manner, merchandise about the end
of July, after receiving a letter from the defendant dated
in the middle of that month (July), wherein he ordered
certain goods for Kanter, and stated:   "As regards the con-
ditions, you will receive payments from Emil Kanter in six
months from the date of the invoice, by three months' drafts
on Hamburgh, punctually.   I hope you will be satisfied
by it, as Mr. Kanter has received the same conditions from
all his other European friends."   The plaintiffs also sold
to Kanter other merchandise on three occasions in 1860,
before the middle of October, but have received no pay-
ments for any goods sold in that year.   They received a
letter in May, 1861, dated on the 8th of that month, from
the defendant, in answer to one addressed by them to
Kanter, demanding payment, in which the defendant stated
that Kanter would be able to pay their debt in full if they

allowed him another year's credit. On the 18th of the same month the defendant took from Kanter a chattel mortgage on all his stock in trade, to secure the payment of nearly $28,000, claimed to be the amount due to the former by the latter, for the purchase of his stock in trade and moneys loaned. After taking possession of such goods, and selling sixty-five hundred dollars worth of them, the residue was worth less than the residue claimed by the defendant. Judgments having been obtained against Kanter, his assets passed into the hands of a receiver.

In cases of this kind the plaintiff is bound to establish both a design to practice a deceit and reliance upon the means used to carry out such design, as an inciting cause to the credit given. There must always be a limit to the period of time before a credit given, within which a false representation made could not be given in evidence to establish an intent to accomplish such deceit, or the giving of the credit on the faith of its statement. The determination of that limit, where there are no other circumstances to fix it but the representation and the credit, cannot be left to the varying impression of juries in each case, but must be adjusted by rules of law. It is easy to specify a limit as a maximum, beyond which a representation could not be given in evidence to establish a deceit by its means; the difficulty lies in fixing the minimum, and there may always be a debatable ground in which the question becomes one of fact. In this case the representation was made in March, 1858, and the credit given in July, 1860, being two years and four months afterwards. Had nothing else intervened, it would be difficult to say that the former was admissible in evidence as the intended cause of the latter. Without inquiry or further information, the plaintiffs as persons of ordinary prudence, could not be presumed to have believed that the circumstances of a party would necessarily remain the same all that time. In *Zabriskie* agt. *Smith* (13 *N. Y. R.* 322), a lapse of seven months

between a representation and a credit, was held too short for any presumption as matter of law that the former was not the cause of the latter, and the question was left to the jury. But the time in this case is quadruple of that in the case just cited, and it therefore does not furnish a decisive standard.

In this case, however, after a continuance of dealings between the plaintiffs and Kanter, until March, 1860, the defendant in July following, again intervenes, acting as Kanter's agent, but personally promising the punctual payment by the latter of his new indebtedness at the end of a proposed credit. This must be sufficient evidence of the continuation of the impression of the earlier representation down to the time of such new negotiations, or its revival, to allow it and them to go to the jury on the question whether the plaintiffs were influenced, however slightly, by them in such sale in 1860. The conduct of the defendant, and his relations with Kanter, were also sufficient *prima facie* evidence to be passed upon by the jury, of the knowledge by the former of the dealings between the latter and the plaintiffs. Knowing such dealings, he was bound also to know that such a letter as he then wrote was likely to renew or keep alive the impressions of his first representations, and induce the plaintiffs to recur to them in giving a new credit. Reiterated assurances of a person's solvency, in whatever form given, and at whatever intervals, provided the first have not entirely been forgotten, have a tendency to deepen the fading impression, even if it has been quite forgotten, to revive it, unless after a great lapse of time. Such was this case, and it should have been left to the jury to say whether the early representations had no influence in inducing the latter sales. Such a case is entirely different from credit given long after a representation of pecuniary ability. In such a case the possibility of a change of them would be such as to prevent any prudent

man from relying upon such old representations, or trusting without a new inquiry.

It does not matter in this case that possibly the previous punctual discharge of his indebtedness by Kanter, or the new representation by the defendant of his ability to pay punctually, may have had a greater weight with them; it would still be a question for the jury whether the influence of the first representations so continued or revived, tended under the circumstances to induce the plaintiffs to sell to Kanter in 1860, the merchandise in question. The representation made by the defendant in 1858, was not merely generally of Kanter's solvency or responsibility. It was special. After announcing his purchase of the defendant's stock, good will and debts, the defendant proceeded to say that he would carry on the business with undiminished means, and requested the plaintiffs to exhibit the same confidence in him as in himself. He was designated, too, as the plaintiff's successor in the firm name adopted. Could stronger language be used to express the substitution of Kanter for the defendant, with the same resources? To prevent any misapprehension, the defendant when interrogated, stated in most emphatic language that there was to be no alteration except in the firm. The possession of an old stock of goods and of borrowed money, for which he owed, certainly did not bear out this statement. Whatever, therefore, might have been the cause of Kanter's insolvency afterwards, and whether the defendant was instrumental in it or not, he was responsible for the truth of his representations, if he intended to and did procure credit for Kanter by their means.

The representations were not a letter of credit for a single transaction; they were operative as to all future purchases which they enabled Kanter to make, and the first payments may have been made as part of a system to lull the plaintiffs into false security. And *prima facie* evidence of the defendant's purpose may be found in his intermed-

dling in Kanter's business, brushing up his credit in 1860, and sweeping away his whole stock of goods within a year afterwards, for part of his claim.

I concur, therefore, in thinking the case was improperly withdrawn from the jury, and that a new trial should be had.